### BLITZ *et ux.* v. TOOVEY.

*(City Court of New York, Special Term.*   January 2, 1890.)

CONTRACTS—SUBSTANTIAL PERFORMANCE.
Defendant contracted with plaintiff to perform "the glass act" in his museum, on the representation that she could walk, jump, and dance on broken glass, and grind it beneath her naked feet.   *Held,* that plaintiff substantially performed the contract by walking and jumping on broken glass, and grinding it beneath her naked feet, though she did not dance on it.

Action by Walter A. and Mary Blitz, his wife, against Henry Toovey, for money alleged to be due plaintiffs as salary for performing certain juggling

feats in defendant's museum; the husband doing what is known in the business as the "fire act," in which he pretended to eat fire, while the wife did the "glass act," which consisted of walking with naked feet on broken glass. The husband wrote to defendant's manager soliciting an engagement for himself and wife, and saying as to his wife: "This is the only lady in the world who walks, jumps, and grinds broken glass to powder beneath her naked feet. Her act is a strong attraction. Would like two weeks," etc. After other letters from Blitz, defendant's manager wrote him, saying that he had "booked" plaintiffs for two weeks. There were printed on defendant's letter rules reserving the right of dismissal for incompetency. Plaintiffs entered on their engagement, and performed one week, at the end of which they were discharged. Defendant claims that Mary Blitz did not dance on broken glass, as was provided by the contract.

*Jones Cochrane,* for plaintiffs.  *Fettretch, Silkman & Seybol,* for defendant.

McAdam, C. J.  The plaintiffs fall within the class of professionals commonly known as "jugglers" or "mountebanks," and their exhibitions were declared illegal. 3 Rev. St. (7th Ed.) p. 1958, § 1; Code Crim. Proc., § 899; Barb. Crim. Law, 594. They were regarded as calling people from their regular business to spend their time to no purpose, and their money foolishly, if not viciously. *Downing* v. *Blanchard,* 12 Wend. 383. Circus companies and negro minstrelsy were tolerated, if licensed, not otherwise. *Thurber* v. *Sharp,* 13 Barb. 627; *Downing* v. *Blanchard, supra.* In the city of New York, all such performances were authorized, if the place where the exhibition is made is duly licensed by the mayor of the city. 3 Rev. St. (7th Ed.) 1958, 1959. But for this statute, the contract sued upon would be void, and no recovery could be had upon it. Even an agreement to dance at a certain theater, it not being licensed according to statute, cannot be enforced. *Gallini* v. *Laborie,* 5 Term R. 242; *King* v. *Handy,* 6 Term R. 286. Though legalized, the nature of the contract sued upon can, in other respects, be no more altered than a leopard can change its spots. The court, in the *Circus Case,* 12 Wend., *supra,* said: "The performance of the defendant was not a puppet-show, nor a wire or rope dance; nor was it any act or feat of a mountebank, although the pretended drawing a tooth was very much like the tricks of a juggler, who makes sport by tricks of extraordinary dexterity, by which the spectator is deceived." In the *Minstrel Case,* 13 Barb., *supra,* the court said: "One trick—that of mesmerizing the leg and arm of one of the party so as to make them stiff and immovable—was a false show of power over the mind and body of another." The acts referred to, if not jugglery, were those of legerdemain, trickery, and imposture; and these are the stock in trade of the juggler. The plaintiffs, while seeking employment, were loud in their own praise respecting their performances; but not more so than the defendant, who knew, from their nature, that they consisted, to a large extent, of trickery and imposition. Before he had seen either of the plaintiffs perform, the defendant made the following announcement concerning them on his play-bills: "Cario! The beautiful Persian princess, who dances in her bare feet on broken glass! She accomplishes this feat without lacerating her fairy feet, pirouetting, jig dancing, and waltzing on broken glass as easily as if she were indulging her terpsichorean proclivities on the luxurious carpets of her oriental home. This is, undoubtedly, the most sensational act of the day. The wonderful fire king! Balbroma, the human salamander! The mysterious monarch of fire and flame eats the eternal element as easily as if it were a Delmonico dinner." The defendant knew that "Cario, the beautiful Persian princess," recently from her "oriental home," was not a princess, and never had an oriental home, and that she was plain Mary Blitz, the wife of the co-plaintiff. He knew that the wonderful fire king was not "Balbroma,"

that he was not a human salamander, and that he did not relish a meal of fire as if it were a Delmonico dinner. On the contrary, the defendant must have known that the plaintiffs were a young couple performing tricks for the amusement of the public in order to earn the means with which to buy the kind of dinners ordinary mortals require to sustain life. The announcement to the public made by the defendant is important only in this: It shows that exaggeration in regard to such performance is the rule, not the exception, and that managers understand that as well as performers. The contract must, therefore, be construed liberally, and in the sense in which the parties understood it, and not literally. Metc. Cont. 277, 278. The defendant concedes that Mr. Blitz filled the part of "Balbroma" satisfactorily, and that he succeeded passably well in eating fire, and in making the public believe that a Delmonico dinner would not have been more palatable. The fault found with Mrs. Blitz is that she did not dance on broken glass, as one Ki-Ki, a colored male performer, did. The evidence proves that Ki-Ki jumped on broken bottles, and that his act was accomplished by a process of hardening the feet, already naturally tough, by an application of tannic acid, boiled. The defendant, certainly, could not expect the delicate Persian princess to discolor her white feet by any such process; for black feet on a white princess would have looked so odd that suspicion would have aroused distrust, and required explanation. The proof shows that Mrs. Blitz actually "did walk upon and jump upon and grind broken glass beneath her feet." How she did it without sustaining serious injury is one of her professional tricks and secrets. The fact that she did it is enough for the purpose of this case. Upon the evidence, there was a substantial performance of the contract; and that is all the law requires in the case of ordinary agreements, and as much as it can require in respect to this extraordinary contract. The performances given by the plaintiffs must have been reasonably well given, for the defendant continued them at all the daily and nightly exhibitions during an entire week. The public expressed no disapprobation, and the discharge which followed at the end of the week was unexpected. There was nothing in the contract, or in the manner of its performance, that authorized the defendant to discharge the plaintiffs; and, as their discharge was wrongful, the plaintiffs are entitled to judgment for $83.05, the amount claimed, with interest.